**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| LaVOY SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action |
| ) | No. 09-1012-CV-W-JCE-SSA |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

**ORDER**

Before the Court are Plaintiff's brief in support of his claim and Defendant's brief in support of the administrative decision. Plaintiff has also filed a reply brief. The case involves the appeal of the final decision of the Secretary denying plaintiff's application for disability benefits under Title II of the Act, 42 U.S.C. §§401 et seq., and his application for supplemental security income under Tittle XVI of the Act, 42 U.S.C. §§ 1381, et seq. Pursuant to 42 U.S.C.§ 405(g) and § 1383(c)(3), this Court may review the final decision of the Secretary. For the following reasons, the Secretary's decision will be remanded under sentence four for further proceedings consistent with this opinion.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When rejecting a claimant's subjective complaints, the ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

    Plaintiff was 48 years old at the time of the hearing before the ALJ.  He alleges disability because of back pain, shoulder pain, arm pain, headaches, low back pain, and depression.  He has a high school education, and past relevant work as an iron worker.

    At the hearing before the ALJ, plaintiff testified that he tried to return to his job as an iron worker in August, 2008, and worked for approximately thirty days.  He was given a job sitting down on an assembly line putting nuts and washers on bolts, but he could not keep up.  He had to stop and lie down because of pain in his arms and neck after he did the work for a while.  This happened about every 30 minutes, and he would lie down for about 10 minutes.  He has pain in both arms, down into his hands and fingers.  The left arm is worse than the right.  He has numbness and tingling down to his fingertips, which comes and goes.  This happens when he is using his hands and arms, after about 10 or 15 minutes, but sometimes when he is just sitting he will notice the tingling.  He has to stretch, shake his hands and fingers, and stop doing what he is doing.  He might have to wait 15 minutes to take up the task again.  He takes Neurontin, which helps with the tingling and numbness.  Plaintiff testified that he has pain in his neck all the time, which is worse when he is active using his arms and hands.  He has pain in his shoulder and in his lower back, as well as frequent headaches that can last for weeks.  Surgery was recommended for his shoulder, but he did not have it because the doctor told him that he had the same type of injury, and the surgery was not guaranteed to help.  The doctor told him that he just needed to know his limitations.  The pain in his low back travels down to his legs.  He has been referred for physical therapy, which he used to have, but then could not afford.  He is in the process of resuming the therapy.  The low back pain travels into his legs whenever he gets up in the morning, gets out of a chair, and whenever he goes from a sitting or lying down position to

standing up. He said stretching or exercise helps, and that he gets Cortisone shots in his lower spine when he can afford it. Plaintiff also testified that he has headaches about once a month that last a week or longer. He has to lie down when this happens and take Ibuprofen, which helps a little. He's not sure what causes the headaches, although it might be his high blood pressure. He also has problems with depression, where he gets really upset, angry because he can't do the things he normally does, sad because he can't play with his two-year-old, and anxious. He takes medication, which keeps him from getting so angry, but does have drowsiness as a side effect. Regarding his daily activities, plaintiff testified that he tries to cook something, do household chores, and watch the news during the day. He gets up and down all day trying to accomplish some chores. He is in constant pain the whole time he is doing anything. He also has to lie down daily. He has blood pressure problems, which cause dizziness and headaches. He has been taking blood pressure medicine ever since his back surgery.

According to the testimony of a vocational expert, if an individual were limited to light work and cannot perform work above shoulder level, should not crawl or climb, but can do all other posturals on an occasional basis, he could not perform his past work, but other work would be available. The vocational expert suggested light assembler, collator, and folding machine operator. If a person had to have two or three fifteen-minutes break, in addition to regular breaks, competitive work would not be available. Adding additional limitations, such as only occasional reaching in all directions, no above-the-shoulder reaching, occasional reaching in front, and only occasional fingering, these jobs would not be available. The same is true if the individual could only use their hands for approximately ten to fifteen minutes at a time and then had to rest their hands for fifteen minutes.

The ALJ found that plaintiff had not engaged in substantial gainful activity since July 18,

2005, the alleged onset date.  He concluded that plaintiff was not fully credible.  It was his finding that plaintiff has "a cervical spine disorder, status post successful micro anterior cervical diskectomy and fusion at C5-C6 and C6-C7 with allograft and anterior cervical plating in October 2005 with a good result and a left shoulder disorder with degenerative joint disease in the acromioclavicular joint and a tear of the supraspinatus tendon. . . ." [Tr. 11], but that he did not have an impairment or combination of impairments that met or equaled a listed impairment.  It was his finding that plaintiff could not perform his past relevant work, but that he had the Residual Functional Capacity ["RFC"] to perform light work, except that he had to avoid performing over-the-shoulder reaching, crawling and climbing.  Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

      Plaintiff contends that the ALJ erred in analyzing plaintiff's credibility, and erred in his RFC assessment.  He requests that the case be reversed and remanded for a new administrative hearing.

      A full review of the record indicates that plaintiff sustained a shoulder injury on-the-job as an iron worker in April of 2005.  He immediately felt shoulder pain, and tingling down his arm.  He sought medical treatment, and was diagnosed with shoulder strain and parenthesis of the right arm.  An EMG and MRI were ordered, which revealed disc protrusions at C6-7 and C5-6 and/or bony spurring.  He was referred to a spine surgeon, and at that time it was recommended that he continue conservative treatment, including epidural steroid injections.  He complained of arm pain and numbness, as well as tingling with numbness in his thumb and index finger.  Plaintiff was given work restrictions regarding overhead activities and heavy lifting. Two series of cervical epidural steroid injections did not improve his condition.  Surgery was suggested, but plaintiff chose to undergo a CT/myelogram and then follow-up.  He was taken off

work at that time. After the results of the tests came back, Dr. Jackson, a physician at the Kansas City Bone and Joint Center, opined that conservative treatment had failed, and that he should consider surgery. In October of 2005, he underwent a micro anterior cervical diskectomy and fusion at C5-6 and C6-7 with allograft and anterior cervical plating. After the surgery, plaintiff still had pain in his left shoulder; he participated in therapy for his neck for two months, and made progress in his goal of increasing his strength. He went back to Dr. Jackson after therapy was finished, complaining of back pain and right arm pain. He received an injection in his shoulder, and was placed on restrictions as part of a functional capacity evaluation. These restrictions included weight limits on lifting, both for floor to knuckle lifting; knuckle to shoulder lifting; and overhead lifting, and that he should avoid extremes of neck range of motion. Plaintiff continued to complain of pain in the following months. He had tenderness, moderately limited neck range of motion, diminished reflexes, and motor and sensory examinations were subjectively diminished. He had more x-rays and another MRI, and received another injection in the left shoulder. He was told by his doctor to maintain a home exercise program and was told that inactivity would make him weaker. The MRI did not show evidence of residual or new nerve compression, but a bit of artifact remained, which caused the MRI to be hard to read to evaluate the presence of central canal narrowing. It was recommended that plaintiff undergo a post contrast CT myelogram, but the record does not indicate that this ever occurred. The MRI of the left shoulder revealed significant inflammation of the supraspinatus with full thickness inflammation consistent with full thickness tear. Dr. Jackson noted that plaintiff should consider an arthroscopic procedure for the shoulder. Another injection was recommended by Dr. Jackson, who declared plaintiff at maximum medical improvement.

      The record indicates that plaintiff is limited in his ability to reach overhead bilaterally,

and that he has limited range of motion in his neck, to the extent that he should avoid extreme neck motion. It is clear that, despite surgery, he continued to report right arm numbness and pain, as well as left arm pain. According to the report of the independent medical examiner, Dr. Stuckmeyer, who evaluated plaintiff in connection with his worker's compensation claim, plaintiff continued to complain of right arm and neck pain after the surgery, and pain in his left arm, as well as numbness and tingling occasionally in his right arm. The doctor's examination indicated decreased range of motion in the cervical spine. The doctor found that plaintiff lacked approximately 50% of right and left side bending and 20% of normal right and left lateral bending. He had full flexion and extension, but had increasing symptoms of neck pain with extremes of range of motion. The doctor opined that plaintiff had a 25% permanent disability to the cervical spine, with an additional 20% disability to the left shoulder as a result of significant atrophy. The record indicates, moreover, that plaintiff continued to complain of pain in his neck, lower back and both shoulders in 2008, to Dr. Greenfield. He also complained of increased pain with movement of the head or overhead activities. The doctor examined plaintiff and found tenderness and muscle spasm on the cervical spine, plus decreased range of motion. Plaintiff also tested positive for Lhermitte's, which is a stabbing sensation from the head down the spine caused by bending the neck forward, and positive Spurling's Maneuver in both the left and right upper extremity. This test is used to evaluate cervical spine radiculopathy, which involves intensified pain with bending.

Plaintiff contends that the RFC determination is flawed because the ALJ did not provide sufficient limitations for his severe impairments, did not consider all of his impairments when assessing the RFC, and did not provide a sufficient narrative bridge connecting the RFC to the medical evidence of record. Specifically, it is contended that the ALJ did not provide sufficient

limitations in plaintiff's ability to reach or perform activities requiring range of motion of the neck based on the impairments the ALJ found severe. Additionally, it is asserted that the ALJ did not properly consider his non-severe impairments in the RFC. Plaintiff contends that the ALJ did not properly consider his depression, hypertension, or low back pain when assessing his RFC. He contends that he was first diagnosed with depression in 2008; that the record shows he was tearful during an examination, and had other symptoms of depression, including suicidal ideation. He began taking Zoloft in 2009. Plaintiff contends that even if not considered severe, the ALJ should have considered this impairment when assessing the RFC. Additionally, plaintiff asserts that he reported low back pain as early as 2006, and that he was complaining in 2008 that he had entire low back pain with involvement of both legs. At therapy sessions, he was observed having difficulty sitting and needed to change positions frequently. In 2009, his physician at Truman Medical Center diagnosed lumbar spinal stenosis, and noted muscle spasms in his back. Plaintiff contends that the RFC is not reflective of his actual capabilities, because when combined with his admittedly severe impairments, he had greater limitations that found in the ALJ's RFC.

An ALJ must determine the RFC, based on the medical evidence regarding the claimant's ability to function in the workplace. Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Id. at 807 (quoting Krogmeier v. Barnhart, 294 F.3d 1019 (8th Cir. 2002). The plaintiff has the burden of producing documents to support his claimed RFC. Cox v. Apfel, 160 F.3d 1203, 1206 (8th Cir. 1998)). The ALJ, however, has the primary responsibility for making the RFC determination, and the Court is required to affirm that

determination if it is supported by substantial evidence in the record as a whole.  McKinney v. Apfel, 228 F.3d 860, 862 (8th Cir. 2000).

After careful review of the record as a whole, the Court finds that the ALJ did not properly assess plaintiff's RFC by not providing sufficient limitations for his severe impairments, not considering all of his impairments, and not providing a sufficient narrative bridge connecting the RFC to the medical evidence of record.  The ALJ erred in not considering the limitation regarding range of motion in plaintiff's neck, as well as any reaching limitations, in his RFC finding.  Additionally, the ALJ did not consider low back pain and depression as severe impairments.  Even a non-severe impairment should be considered, moreover, at step four of the evaluation process.  Regarding the lumbar spinal stenosis, the record should be fully developed as necessary to determine whether this condition meets the durational requirements of a severe impairment.  The Court finds, based on the record as a whole, that it is inadequately developed regarding the extent that plaintiff's impairments, both severe and non-severe, affect his ability to perform substantial, available work.

Regarding the ALJ's credibility analysis, plaintiff contends that the ALJ failed to provide a proper credibility analysis because he relied upon his own medical judgment, did not consider the nature of the treatment received, and did not properly consider plaintiff's work history.  The record indicates that the ALJ found that plaintiff's complaints "far exceed[ed] the medical diagnoses and treatment, and that there was some evidence of malingering."  [Tr. 13].

Given the medical evidence and the level of treatment plaintiff has received, it is not clear that plaintiff's complaints are in excess of the medical diagnoses.  Various diagnostic tests show problems with his cervical spine, which required surgery for fusion of C5-6 and C6-7 with allograft and anterior cervical plating.  Prior to the on-the-job injury, he had a solid work history

with good earnings. After his injury, he had two herniated discs in his neck, requiring surgery with hardware being placed in his neck. Surgery was recommended again for plaintiff's shoulder; he has been treated multiple times with epidural injections; and he has been prescribed strong pain medication. The only reference to malingering is on one occasion, as a possible source of plaintiff's complaints, and was never mentioned again. In fact, plaintiff was thereafter diagnosed with "diffuse muscle aches/arthralgia; multifactoria including C spine compression and neuropathy, rotator cuff injury (full thickness tear of supraspinatus on L), lumbar spinal stenosis, depression." [Tr. 388]. It is not clear that the ALJ properly assessed plaintiff's credibility when assessing his capabilities.

This Court has carefully reviewed the record, and finds that remand is required in this case. Accordingly, the case should be reversed and remanded for further proceedings consistent with this opinion.

It is hereby

ORDERED, ADJUDGED AND DECREED that the decision of the Commissioner be reversed, and that this matter be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this opinion.

/s/ James C. England  
JAMES C. ENGLAND  
United States Magistrate Judge

Date: 3/22/11